## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

TAMARA STAUB,              )
                               )
       v.                )       **Case No. 19-cv-4249-JES-JEH**
                               )
HY-VEE, INC.,             )

## ORDER AND OPINION

This matter is now before the Court on the Motion for Summary Judgment of Defendant Hy-Vee, Inc. (Doc. 20). Plaintiff Tamara Staub has filed a Response (Doc. 22) and Defendant has filed a Reply (Doc. 25). For the reasons set forth below, Defendant's Motion (Doc. 20) is GRANTED in part and DENIED in part.

### PROCEDURAL HISTORY

The female Plaintiff Tamara Staub was employed by Hy-Vee, Inc., for 22 years, having most recently worked at the store located at 4218 Avenue of the Cities in Moline, Illinois ("Moline 1"). Plaintiff's employment with Hy-Vee terminated on October 21, 2018, allegedly due to gender discrimination. In January 2019, Plaintiff applied for another position at Hy-Vee and was not granted an interview, allegedly due to gender discrimination and in retaliation for her complaints of gender discrimination.

Plaintiff timely filed a discrimination charge with the Illinois Department of Human Right ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") and was issued a Right to Sue Letter on November 18, 2019. On December 11, 2019, Plaintiff filed a four-count complaint, alleging violations of Title VII, 42 U.S.C.  2000e et seq. In Count I, Plaintiff alleged that she had suffered retaliation and had been exposed to a hostile work environment. Plaintiff supported this with allegations that in 2016 and 2017, her supervisor, Tim Mansfield, made comments that he did not favor women in upper management and, in July 2017, demoted her

from her upper management position as Manager of Store Operations to Pricing Data Analyst ("PDA"). Plaintiff did not file an EEOC Charge of Discrimination, however, until February 22, 2019, more than 300 days after the complained-of conduct.

Defendant's motion for summary judgment asserts, in part, that Plaintiff's Count I claims regarding her removal as Manager of Store Operations are time-barred. Defendant notes that Plaintiff was demoted in July 2017 and was required to file her Charge of Discrimination within 300 days. As a result, she cannot proceed on any complaints which occurred prior to April 28, 2018. Defendant further asserts that the Count I retaliation claim is beyond the scope of the EEOC Charge of Discrimination, and that Plaintiff could not establish a prima facie case of either retaliation or hostile work environment. In her response, Plaintiff has conceded one or more of Defendant's arguments, abandoning all Count I claims.

In Count II, Plaintiff alleges gender discrimination in that the PDA position to which she was transferred in July 2017, was eliminated in October 2018. Plaintiff claims both that the position was not actually eliminated, but merely recategorized and given to a male employee; and that, hers was one of two PDA positions and, as she had more seniority than a male in the other PDA position, her position should not have been phased out. Plaintiff also pled a retaliation claim in Count II but asserts in her response to summary judgment that she is abandoning this as well.

In Count III, Plaintiff alleged that several months after being laid off in October 2018, she learned that a new Quad Cities PDA position was being created. Plaintiff applied for the job and was not given an interview. Plaintiff asserts that as a laid off employee she was to be given special consideration for any such opening. Plaintiff asserts that the failure to give her this

consideration represented a "shift in hiring practices" and evidenced gender discrimination, as the job went to a male applicant.

In Count IV, Plaintiff alleged that she was not considered for the Quad Cities PDA position in retaliation for her October 7, 2018 complaints of gender discrimination.

### BACKGROUND

Plaintiff began her employment at Hy-Vee on April 23, 1997. That employment ended on October 21, 2018, with Plaintiff claiming that she was terminated, or constructively discharged; and Defendant asserting both that she voluntarily resigned and was laid off.

In March 2016, Plaintiff was the Manager of Store Operations at the Hy-Vee store in Rock Island, known as Moline 1. Around that time, Tim Mansfield was transferred there as Store Director and Plaintiff's direct supervisor. When Mansfield started at Moline 1 there were four employees holding upper management "Managers Of" positions: Plaintiff Staub, Jon Mozingo, Bill Schwab, and Jared McGraw.

Plaintiff has testified that once each in 2016 and 2017, Mr. Mansfield made comments to her to the effect that he did not like women in certain upper management positions. She testified that seven to eight months after Mansfield started at Moline 1, he remarked to Plaintiff "[t]here's lots of opportunities at Hy-Vee for women, not upper management." Mr. Mansfield has denied making these statements.

At some point in either the summer or fall of 2016, with the parties disagreeing on the date, Jon Mozingo was moved from his Manager Of position to that of PDA. Subsequent to this, Mansfield identified a need to create a second PDA position. He testified that this was due to issues with inventory/cycle counts at Moline 1 and there was "a lot to fix." In July 2017, Mansfield moved Plaintiff from her Manager Of position to that of PDA. Mansfield allegedly

3

told Plaintiff that the new position would give her more time to be a mother to her pregnant

daughter living in Chicago, and a grandmother to the baby her daughter was expecting. Plaintiff

was not happy with the move, believing it was a demotion, although her benefits and pay

remained unchanged. Defendant has identified the move as a lateral one, although Mr. Mansfield

testified at his deposition that it was a demotion.

It appears that Manager Of positions were in upper management while the PDA and

Department Manager positions were not. Plaintiff points out that when Mr. Mansfield was

transferred to Moline 1, there were four "Managers Of" and she was the only female and, that

when Mansfield transferred her to the PDA position, he replaced her with a male. Plaintiff

asserts, and Defendant does not dispute, that Mansfield has never placed a female in a "Manager

Of" position, either at Moline 1 or in any of his prior positions at Hy-Vee. While Mr. Mansfield

had testified that he had promoted a number of females to management positions at the Moline 1

store, Plaintiff counters that none were to upper management.

At the time of the July 2017 meeting, Plaintiff asked Mansfield whether he was happy

with her work. He told her he was but wanted to move upper management in a new direction.

Plaintiff alleges, and Mansfield disputes, that he also told Plaintiff that he just liked women in

certain positions such as floral manager, deli manager, accounting, scanning, and human

resources.

Plaintiff went to HR Director Kay Meyers after that meeting, asking whether Mansfield

had the authority to take this action. Ms. Meyers contacted Corporate HR on Plaintiff's behalf,

later telling her that Mansfield did have that authority. Plaintiff testified at her deposition that she

also told Meyers that Mansfield wanted her gone so that all of his upper management would be

male. Mansfield denies ever being aware that Plaintiff had made this complaint to Meyers and

4

denies that it could have served as an impetus for retaliation. Plaintiff concedes that Mansfield was not aware of this July 2017 report to Meyers, but asserts that he was aware of an October 7, 2018 email she sent to Lainie Cooney in Corporate HR, where she complained that Mansfield was discriminating against her.

On October 4, 2018, Plaintiff was working in the PDA position when she was called to a meeting with Mansfield and HR Director Meyers. Plaintiff was told that her PDA position was being eliminated. Mansfield has testified that the position was not providing an economic return, while Plaintiff claims that he told her that she was overpaid and overqualified. Plaintiff was offered what all agree was a lateral transfer, to be the Manager of the Wine and Spirits Department.

Plaintiff claims, and Defendant disputes, that she told Mansfield at that meeting that she had a moral objection to managing this Department as her maternal grandparents and uncle were "raging alcoholics." Plaintiff testified that her job performance would be judged on up-selling alcohol by encouraging customers to buy more than originally intended. Plaintiff believed she was destined to fail at this job, given her moral compunction.

Plaintiff alleges that she had also told Mansfield of this objection on a prior occasion, shortly after Mansfield had started at the store. On that unidentified date, Mansfield had a one-on-one meeting with Plaintiff who told him that she would work in any position in the store, save Wine and Spirits. Mr. Mansfield denies being told of this objection on either occasion.

As previously noted, on October 7, 2018, Plaintiff sent an email to Lainie Cooney. There, she told Ms. Cooney that Mansfield intended to transfer her to a job which was morally objectionable to her. Plaintiff also complained about having been moved from Manager of Store Operations in July 2017 and being replaced by a male. Plaintiff asserted in the email that

5

something needed to be done, and if it were not, she would consider filing a discrimination lawsuit.

On October 8, 2018, Plaintiff met again with Mansfield and Meyers. Plaintiff claims that she was told that there would not be a full-time position for her if she refused the Wine and Spirits job. Plaintiff asked if she was being fired and Mansfield told her that her position was being eliminated but she could apply for another position, at a reduced wage. Plaintiff asserts that she was never given any particulars as to alternate employment. Defendant claims that Plaintiff refused outright to consider any job which involved a wage reduction.

On October 9, 2018, Plaintiff sent a second email to Ms. Cooney, claiming that she had been fired at the October 8 meeting and that her last day at Hy-Vee would be October 21, 2018. Ms. Cooney sent the October 7 and October 9 emails to District Vice President Steve Mokosak, and spoke with Mansfield. Ms. Cooney asked him if he knew why Plaintiff was "reaching out." Mansfield responded that he was restructuring the store and had offered Plaintiff a full-time position in the Wine and Spirits Department.

Plaintiff asserts that this call from Lainie Cooney gave Mansfield notice of her complaints of gender discrimination. Mansfield denies any such knowledge, noting that he was not copied on the emails, and that Ms. Cooney's question as to why Plaintiff was reaching out did not provide notice to him that Plaintiff made reports of gender discrimination.

On October 19, 2018, Plaintiff had another meeting with Mansfield and Meyers and was told that Manager of Wine and Spirits was the only full-time position available to her. Plaintiff challenged this, telling Mansfield that she applied for the newly created Assistant Director of Store Operations job. Mansfield allegedly responded that he would not consider Plaintiff for it, as he had moved her from Manager of Store Operations because he did not like her management

style. He further noted that the Assistant Director of Store Operations would have oversight responsibilities for the Wine and Spirits department.

Plaintiff asserts that when her PDA job was eliminated, Hy-Vee had the opportunity to name her the Assistant Director of Store Operations, and rather than doing that, offered her only the objectionable Wine and Spirits position. Plaintiff asserts that this evidenced gender discrimination as the new Assistant Director position was essentially the same as her previous Manager of Store Operations job. Mansfield testified that the decision to create a new Assistant Director of Store Operations position was not followed through, and the position never filled. Plaintiff's response to this is somewhat equivocal, as she testified at her deposition only that she "believed" that this position was eventually filled.

Q. Do you know if anyone filled [Assistant Director of Store Operations] position?

A. I believe Jon Mozingo's in that position again now. I don't know how soon to that he was, but I believe that's the position he is in right now. (Doc. 22 at 27).

At the October 19, 2018 meeting, Mansfield proffered an Employee Termination Report, which identified Plaintiff as having voluntarily resigned by refusing the transfer to Wine and Spirits. Plaintiff refused to sign and claims that she was constructively fired. In support, she references Ms. Meyer's meeting notes which stated "Wine and Spirits is the choice at this time for Tammy. If she does not want to take that opportunity, she doesn't have a full-time position at HyVee Moline #1." Plaintiff also asserts that, although she asked, she was given no specifics as to any other positions which might be available to her.

Later on October 19, 2018, Mansfield was contacted by Sheila Lang, Executive Vice President. Ms. Lang instructed him to change the termination report to indicate that Plaintiff was laid off, rather than that she voluntarily quit. Lang also told Mansfield that Hy-Vee would not contest any unemployment benefits Plaintiff might seek.

7

Plaintiff alleges gender discrimination in that it was her PDA position, which was cut, rather than that of Jon Mozingo. Plaintiff notes that she had previously worked five years as a PDA in the Davenport 1 store and, thus, had more experience and seniority in the position. Defendant challenges Plaintiff's claim to seniority, asserting that her prior experience was some 10 years before at a different store, under a different manager. Defendant asserts that, as Jon Mozingo started in that position at Moline 1 in the summer of 2016, and Plaintiff started in July 2017, he had one year more seniority than she.

Several months after leaving Hy-Vee, Plaintiff learned that a PDA position was opening in the Quad Cities. Mansfield testified at his deposition that this was a newly created position for a Pricing Dated Analyst with responsibility for a group of five Illinois Hy-Vee stores. On January 17, 2019, Plaintiff applied, but was never scheduled for an interview. Plaintiff claims that, as Hy-Vee had categorized her as laid-off employee, she should have had "first dibs" on the job.

Mansfield was on the interview panel for the Quad Cities position and has testified that District Vice President Steve Mokosak instructed the panel to limit interviews to current, full-time Hy-Vee employees. As a result, 18 external applicants, including Plaintiff, were not scheduled for interviews. Mansfield attests that he did not play a part in this decision, and that he and Mokosak never discussed Plaintiff. The position ultimately went to a male employee who was working as a PDA at the Hy-Vee store in Silvas, Illinois.

The Court notes that Plaintiff bases her Count II gender discrimination claim on the alleged conduct of Store Manager, Mansfield; and her Count III gender discrimination and Count IV retaliation claims on the alleged conduct of Mansfield and Mokosak. Under Title VII, Hy-Vee is potentially liable for the act of its officers and employees as the definition of employer

includes the employer's agents under "agency principles." *Pennsylvania State Police v. Suders*, 52 U.S. 129, 144 (2004), citing 42 U.S.C. § 2000e(b).

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on

which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

### DISCUSSION

The Court has adopted the Undisputed Material Facts ("UMF") submitted by the parties and has identified those facts where are in dispute. It is noted, however, that as Plaintiff has conceded Defendant's motion as to Count I and the Count II retaliation claim, some facts previously identified as undisputed and material, are no longer material. These facts have nevertheless been recounted here for context.

### COUNT II GENDER DISCRIMINATION

"Title VII makes it an unlawful employment practice 'to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... or sex.' 42 U.S.C. § 2000e-2(a)(1)." *Lawrence v. ZionSolutions, LLC*, No. 18-7128, 2021 WL 4988654, at *5 (N.D. Ill. Oct. 27, 2021). "[T]he singular question that matters in a discrimination case is: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019), (quoting *Johnson v. Advocate Health and Hosps. Corp.*, 892 F. 3d 887, 894 (7th Cir. 2018)).

Plaintiff has alleged gender discrimination in the elimination of her Moline1 PDA job. Plaintiff had originally pled that the PDA position was only ostensibly eliminated, repackaged as the Quad Cities PDA position, and given to a male. In response to summary judgment, however, Plaintiff concedes that the Quad Cities job was an "expanded version" of her PDA job. Defendant denies that the Moline 1 PDA job was eliminated for a discriminatory purpose,

10

providing Tim Mansfield's testimony that the Moline 1 position was eliminated for a business reason, as it was not proving profitable to have two PDA positions at the Moline 1 Store.

Defendant has structured its motion for summary judgment on the framework identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, Plaintiff must "show evidence that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *McDaniel*, 940 F. 3d 368 (citing *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018)). "If the plaintiff meets each element of her prima facie case, 'the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* at 719–20.

Defendant Hy-Vee concedes that Plaintiff is a member of a protected class. It also concedes that Plaintiff met its legitimate expectations despite Mansfield's testimony that he did not like Plaintiff's management style. Defendant disputes the two remaining elements; whether Plaintiff suffered an adverse employment action, and whether she was treated less favorably than a similarly situated employee, Jon Mozingo, who was not a member of her protected class.

"Adverse employment actions generally fall into three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011). Plaintiff's claim is based on the third category, that she was constructively

discharged. A constructive discharge may result from unbearable conditions, as indicated, and also where a plaintiff believes she had no recourse but to resign. This is, that the "handwriting was on the wall" and "the axe was about to fall." *Fischer v. Avanade, Inc*., 519 F. 3d 393 (7th Cir. 2009).

Defendant asserts that the elimination of Plaintiff's PDA position did not amount to constructive discharge as, when the job was phased out, she was offered another position at the same rate of pay. Defendant claims that as the Wine and Spirits position was admittedly a lateral transfer, there was no constructive discharge and no adverse employment action. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911-912 (7th Cir. 2004) (a lateral transfer is not considered an adverse employment action in a gender discrimination analysis); *Scaife v. U.S. Department of Vet. Affairs*, 504 F.Supp.3d 893, 911 (S.D. Ind. 2020) (transfer to a different position with no reduction in pay or lost wages does not constitute constructive discharge.)

Plaintiff claims, however, that the proposed transfer to Wine and Spirits was pretext, meant to place her in an unbearable situation and cause the termination of her employment. The Court notes that in some situations, there can be an adverse employment action even without a loss in pay or benefits. *See Collins v. State of Ill.*, 830 F.2d 692, 702–03 (7th Cir. 1987) (finding question of fact remained where there was a substantial change of working condition without a change in salary or other monetary benefits). "Title VII does not limit adverse job action to strictly monetary considerations. One does not have to be an employment expert to know that an employer can make an employee's job undesirable or even unbearable without money or benefits ever entering into the picture." *Id*. at 703.

In Collins, the Seventh Circuit found a potential adverse employment actions where plaintiff:

> was transferred to a job where "her supervisors were unsure of her responsibilities; she no longer had her own office, but instead was placed at a desk outside her supervisor's office where a receptionist would normally sit; she no longer had a telephone to use; and she was no longer allowed to have business cards or to be listed in professional publications as a library consultant.

*Id*. at 704. *See also*, *Stipetich v. Grosshans*, 612 N.W.2d 346, 352–53 (Wis. Ct. App. 2000) (an adverse employment action may be found "by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, *or other indices that might be unique to a particular situation*." (emphasis added) (internal citation omitted).

Plaintiff has asserted that prior to July 2017, Mansfield, and Hy-Vee in general, were aware that she had a moral objection to working in the Wine and Spirits Department. Plaintiff claims that the proposed transfer was a ploy by Mansfield to make her job unbearable, effecting a constructive discharge and an adverse employment action under *McDonnell Douglas*. While Defendant claims that a lateral transfer, at the same rate of pay is not actionable, there remains an issue as to whether Mansfield attempted to place Plaintiff in a situation which amounted to an adverse employment action.

The Court now considers the fourth element of the prima facie case, whether a male colleague, Mozingo, was treated more favorably than Plaintiff. Plaintiff claims he was, asserting that she had more seniority than Mozingo and her PDA position should have been preserved over his. Plaintiff bases this on the uncontroverted evidence that she had five years' prior PDA experience at the Davenport Store. Defendant responds that Plaintiff's prior experience was a decade earlier, at a different store, under a different manager, while Mr. Mozingo started in the

13

Moline 1 PDA position one year before Plaintiff. Defendant notes the Seventh Circuit's caution to the trial courts not to second-guess management decisions so long as those decisions are not discriminatory in nature. *O'Regan v. Arbitration Forums, Inc*., 246 F.3d 975, 984 (7th Cir. 2001) (courts "do not sit as a kind of 'super-personnel department' weighing the prudence of employment decisions made by firms charged with employment discrimination.")

It should be noted here that the Court does not find an issue of discrimination in the mere fact that the job was eliminated. This is so, as, while Plaintiff has alleged that it was recast as the Quad Cities PDA position and given to a male, she has failed to establish that they were essentially the same job. The uncontroverted testimony is that the Quad Cities position oversaw operations at five Illinois stores, while Plaintiff's position was one of two at a single store.

The issue is whether the elimination of Plaintiff's job over that of Mozingo evidenced discrimination. Plaintiff urges the Court to consider the various statements allegedly made by Mansfield to support that discriminatory animus was the real reason her job was the one phased out. While some of these statements would be time-barred if offered as a basis for a claim, they may be considered as evidence of discriminatory animus. *See West v. Ortho-McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005) ("acts outside the statutory time period cannot be the basis for liability, but the statute does not 'bar an employee from using the prior acts as background evidence in support of a timely claim.'" *See id*. at 581 (supervisor's racially biased statements, even though time-barred, should have gone before the jury).

As a result, the Court will consider those statements allegedly made by Mansfield in 2016 and 2017; that there was not a place at Hy-Vee for women in upper management, that women did well in the floral, deli, and other such departments, and different job responsibilities would give Plaintiff time to be a mother and grandmother.

14

Defendant asserts that even if the statements attributed to, and denied by, Mansfield are considered by the Court, there is not temporal connection between them and the decision to eliminate the second PDA position. Defendant notes that isolated, non-contemporaneous statements are insufficient to establish gender discrimination. *See Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999) ("[e]vidence of discriminatory motives must…have some relationship with the employment decision in question. Inappropriate but isolated comments that amount to no more than 'stray remarks' in the workplace will not do." However, "[e]ven isolated comments may constitute direct evidence of discrimination if they are 'contemporaneous with the discharge or causally related to the discharge decision making process.'" *Id.* at 1044, citing *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 723 (7th Cir. 1998).

Plaintiff asserts that she lost her PDA position because of Mansfield's discriminatory animus, as exemplified by his impermissible stereotypes of women in the workplace. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000) (evidence of gender stereotyping, followed 3 to 4 months later with employee's discharge, raised a material issue of fact to defeat summary judgment). *See id.* (a reasonable jury "could find that this decision was motivated at least in part by the double-standard applied to men and women …")  It is notable that in *West*, the Seventh Circuit found the employer's racially discriminatory remarks in 1997, 1998 and 1999, relevant to the termination of Plaintiff's employment in 2000. There, the Appellate Court found that not allowing these otherwise time-barred statements to go before the jury was an abuse of discretion.

Here, Plaintiff has identified facts to support a prima facie case of gender discrimination in that she lost her PDA position even though she had more total years of experience in the job than a similarly situated male. As a result, the burden shifts to Defendant to identify a non-

discriminatory reason for its actions; and then to Plaintiff to establish that the proffered reason is mere pretext. *See Fischer*, 519 F.3d at 403 ("To show pretext, 'a plaintiff must show that (1) the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on a discriminatory intent.'")

Mansfield has testified that it was his belief that Mozingo, with two years' experience in the Moline 1 PDA position, had more seniority than Plaintiff. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 693 (7th Cir. 2006) (issue is whether employer "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless."). Plaintiff responds that this is pretext, as the uncontroverted evidence establishes that she had five years' previous experience as a PDA at a different Hy-Vee store. Mansfield was admittedly aware of this but apparently did not consider it, at least to the point of crediting Plaintiff with more seniority than Mozingo.

The Court finds that there remains a factual dispute as to whether Plaintiff had more seniority than Mozingo, and the statements allegedly made by Mansfield provide evidence that discriminatory animus, rather than considerations of seniority, motivated the actions. *See West*, 405 F.3d at 581–82 (if evidence of discriminatory statement were true, it established bias on part of supervisor on which a reasonable jury could find discrimination).

Plaintiff asserts, further, that she can support her claim under the totality of the evidence or holistic approach applied in *Ortiz v. Werner Enterpises, Inc*., 834 F.3d 760 (7th Cir. 2016). There, the Seventh Circuit instructed that evidence in a discrimination case is to be considered as a whole and not confined to a formulistic analysis. The Seventh Circuit affirmatively overruled cases that had pigeon-holed evidence to the direct method, indirect method, or "convincing mosaic" formulas of proof. *See id*. at 763-64. "Evidence is evidence. Relevant evidence must be

considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Id*. at 765.  *See Igasaki v. Illinois Dep't of Fin. & Prof'l Regulation,* 988 F.3d 948, 957–58 (7th Cir. 2021) (citing *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020)). *See also*, *Pearson v. City of Peoria, Illinois,* No. 18-1452, 2022 WL 198555, at *10 (C.D. Ill. Jan. 21, 2022) (citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). "It is well-settled that a plaintiff may still utilize the *McDonnell Douglas* 'burden-shifting' framework to meet the holistic standard described in *Ortiz." Id*. at 894.

The relevant inquiry under *Ortiz* is whether a reasonable juror could conclude that, had Plaintiff been male, and "everything else had remained the same," would she have retained her PDA job? *Ortiz*, 834 F.3d at 764. As with the *McDonnell Douglas* analysis, the Court finds there remains a material issue of fact as to this, precluding summary judgment as to Count II.

Plaintiff makes the additional and ill-founded argument, that Mansfield's offer to transfer her to the Wine and Spirits Department was intended to exploit a known vulnerability. Plaintiff cites *Washington v. Ill. Dep't of Revenue,* 420 F.3d 658, 662 (7th Cir. 2005) which arose from a retaliation claim. The Seventh Circuit, however, has declined to extend the exploitation of known vulnerabilities to a discrimination claim. *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012) (confirming *Washington* applies only to retaliation claims); *Douthit*, 2014 WL 1584320, at *6.

Plaintiff has established enough, however, under the *McDonnell Douglas* and *Ortiz* analyses to proceed on her Count II claim that the elimination of her PDA position and proposed transfer to the Wine and Spirits Department was an adverse employment action; and the elimination of her position in favor of Mozingo's was disparate treatment so as to support her

17

claims of gender discrimination. Defendant's motion for summary judgment as to Count II is denied.

### COUNT III QUAD CITIES JOB

In Count III, Plaintiff alleged that she was not considered for the Quad Cities PDA position, "an expanded version of her old job," due to gender discrimination. Plaintiff asserts that, although she was qualified, she was not even given an interview, and the job went to a male applicant. Mr. Mansfield testified at his deposition that the interview panel, of which he was a member, was directed by Hy-Vee District Vice President Steve Mokosak, to consider only current, full-time employees for the position. Plaintiff, along with 17 external applicants who had applied for the position, did not qualify for an interview.

Plaintiff asserts that, as she was a laid-off employee, she should have had preferential status as to this job. Plaintiff does not back this up by identifying any policy or practice that laid-off employees were to be preferred over other applicants. In fact, when Plaintiff asked HR Director Meyers whether there was such a policy, Ms. Meyers answered that she did not know. Defendant now provides the affidavit of Lainie Cooney who attests that in 2018-2019, Hy-Vee did not have any policy to recall or prioritize the hiring of laid off employees. (Doc. 25-2 at 14).

Plaintiff fails to identify facts to support that Mansfield played a part in her not being considered for the Quad Cities job. Defendant has provided uncontroverted evidence that it was Vice President Mokosak who made the decision which resulted in Plaintiff's, and 17 others' ineligibility for the position. Plaintiff has failed to identify evidence to support that Mokosak acted with discriminatory animus when he directed that the new Quad Cities PDA position be filled by a current full-time employee. As Defendant notes, Mokosak did not participate in the interview panel and there is no evidence in the record that he was even aware that Plaintiff had

applied. *See Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 787-788 (7th Cir. 2004) (plaintiff failed to establish that the CEO who generally directed cost-savings measures had liability for plaintiff's termination by others).

While Plaintiff claims that she should have had a priority in consideration for the Quad Cities job, she has not identified any policy or practice to substantiate this, and Ms. Cooney has testified otherwise. "Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S., 424, 430-431 (1971). Defendant's motion for summary judgment is GRANTED as to Count III.

### COUNT IV RETALIATION

Plaintiff also asserts that she was not given the Quad Cities PDA position in retaliation for having complained of gender discrimination, implicating both Mansfield and Mokosak. To prevail on a Title VII retaliation claim, a plaintiff must prove that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *Brown v. Chicago Transit Auth.*, No. 17 - 08473, 2020 WL 777296, at *10 (N.D. Ill. Feb. 14, 2020) (citing *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)). The standard for demonstrating causation in a Title VII retaliation claim is whether, considering the evidence as a whole, the defendant took an adverse employment action

because the plaintiff engaged in a protected activity." *Brown,* at *11 (citing *Ortiz*, 834 F.3d at 765).

Plaintiff has sufficiently established that she engaged in protected activity through her October 7, 2018 email to Ms. Cooney. Plaintiff had originally pled that her July 2017 report to Ms. Meyers also constituted relevant protected activity, but has since conceded that Mr. Mansfield, and apparently Mr. Mokosak, were not aware of this verbal report.

Plaintiff has provided evidence, however, that Steve Mokosak was sent the October 7, 2018 email as Ms. Cooney forwarded that to him, along with the October 8, 2018 email. Viewing all inferences in the light most favorable to Plaintiff, the Court will assume that Mr. Mokosak reviewed that email. Mr. Mokosak has provided an affidavit in which he does not attest to the contrary. (Doc. 25-2 at 10).

Plaintiff has failed to establish, however, that Tim Mansfield was aware of the October 7, 2018 email Plaintiff sent to Ms. Cooney. Although Ms. Cooney called Mr. Mansfield after receiving it, she only inquired as to whether Mansfield knew why Plaintiff was reaching out, and there is no evidence that she shared the contents of the email with him, and he specifically denies that she did. As a result, Plaintiff fails to substantiate that Mansfield was aware of her protected activity so as to have retaliated against her because of it. She also fails to identify evidence to support that Mansfield influenced Mr. Mokosak's decision to not interview external candidates for the position.

As to Mr. Mokosak, although he was presumably aware of Plaintiff's October 7, 2018 complaints of gender discrimination, Plaintiff fails to establish the next two elements of the retaliation claims; that she suffered an adverse employment action, and that there was a causal link between the protected activity and the adverse action. Defendant has provided

uncontroverted testimony that Plaintiff was not considered for the Quad Cities position because Mr. Mokosak made the decision to fill the Quad Cities position with an in-house candidate, rendering Plaintiff and 17 other external applicants ineligible. (*See* Mokosak affidavit Doc. 25-2 at 10).

Plaintiff asserts, without support, that Mokosak must have been motivated by discriminatory animus as the decision to fill the Quad Cities position in-house was a "shift in hiring practices," done to exclude Plaintiff from consideration. Plaintiff offers only unsupported suspicion, claiming that as Cooney forwarded Plaintiff's October 7, 2018 email to Mokosak, he must have acted with retaliatory animus. Plaintiff does not, however, offer evidence of Hy-Vee's or Mokosak's prior hiring practices or identify in what way, Mokosak deviated from them. Plaintiff does not claim, for instance, that Mokosak had never before limited a job opening to current, full-time employees or that Hy-Vee had a policy against doing so. Plaintiff, similarly, fails to substantiate her claim that she should have had preferential status as to this position. For its part, Defendant has provided evidence that Hy-Vee did not maintain a "layoff" or "recall" policy which encouraged the hiring of laid off employees over current employees or other external candidates.

Plaintiff offers only unsupported suspicion, urging the Court to let the jury decide whether Mansfield, Mokosak or both, are lying. Plaintiff may not avoid summary judgment merely on conjecture, without identifying a material issue of fact to be determined by the jury. *See Cardoso v. Cellco P'ship*, No. 13-2696, 2014 WL 6705282, at *19 (N.D. Ill. Nov. 26, 2014) (mere speculation insufficient to claim of retaliatory animus). Here, Plaintiff was no longer a Hy-Vee employee and did not meet the qualifications as interviews were extended only to then-existing full-time employees. As a result, Plaintiff fails to sufficiently establish that the failure to

interview her amounted to an adverse employment action. *See Griggs*, 401 U.S. at 430-431

("Title VII, however, to guarantee a job to every person regardless of qualifications.")

Even if it were otherwise, Plaintiff cannot establish the next element, a causal link

between the protected activity and the adverse action. As Defendant asserts, 14 weeks passed

between the time the October 7, 2018 email was forwarded to Mr. Mokosak, and the time

Plaintiff applied for the Quad Cities position. *See Burks v. Wisconsin Dept. of Transp.,* 464 F.3d

744, 758–59 (7th Cir. 2006) ( "suspicious timing alone ... does not support a reasonable inference

of retaliation" because the "mere fact that one event preceded another does nothing to prove that

the first event caused the second" (citation omitted)). *See Argyropoulos v. City of Alton*, 539 F.3d

724 (7th Cir. 2008) (plaintiff's termination seven weeks after filing sexual harassment would not

defeat summary judgment); *EEOC v. Yellow Freight Sys., Inc*., 253 F.3d 943, 952-53 (7th Cir.

2001) (en banc) (six-week interval between filling of claim and termination of employment

would not support retaliation claim). *See also*, *Igasaki*, 988 F.3d at 959 ("for an inference of

causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no

more than a few days to elapse between the protected activity and the adverse action.") (internal

citation omitted). Defendant's motion for summary judgment is GRANTED as to Count IV.

## CONCLUSION

For the reasons stated above, Defendant's [20] Motion for Summary Judgment is DENIED

as to Count II and GRANTED as to Counts III and IV.


ENTERED this 18th day of March, 2022.

s/James E. Shadid

JAMES E. SHADID

UNITED STATES DISTRICT JUDGE
